UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| XTRA LEASE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CV162 TIA |
| | ) | |
| PACER INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff XTRA Lease LLC's Motion for Partial Summary Judgment and Defendant Pacer International, Inc.'s Motion for Final Summary Judgment. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Facts**

On September 19, 2008, Pacer Transport, an affiliate of Defendant Pacer International, Inc. ("Pacer"), leased a flatbed semi-trailer from XTRA Lease LLC ("XTRA") pursuant to a Rental Agreement. (Mem. in Supp. of Pls' Mot. for Summ. J. 1, ECF No. 64) On September 27, 2008, the trailer was involved in an accident in Polk County, Iowa, that resulted in the death of the driver of the other vehicle and personal injuries to the passenger of that vehicle. (Mem. in Supp. of Pls' Mot. for Summ. J. 2, ECF No. 64) The survivors of the deceased driver filed a Complaint in the District Court for Polk County, Iowa against the driver of the semi-tractor pulling the trailer, Pacer, the inspector of the trailer, and XTRA. Id. The underlying suit, Statler, et al. v. Faust, et al., Case No. CL114280, alleges that one of the trailer's wheels struck George Statler's car, resulting in the death of George Statler and significant injuries to his son Brandon. (Pet. at Law 5, ECF No. 1-6) Among other allegations, the Complaint alleges that XTRA was negligent before September 27, 2008 for not

ensuring proper inspection to guarantee the safety of its leased trailer, in leasing an unsafe trailer to Pacer, and in employing an unqualified person to inspect and certify the trailer (Counts II and V). (Pet. at Law 7-8, 12, ECF No. 1-6) Counts VII and VIII are brought under a res ipsa loquitur theory against all defendants, including XTRA, and state that if one or more Defendant had used reasonable care in inspecting, maintaining and/or operating the trailer, the wheel would not have come off. (Pet. at Law 14-16, ECF No. 1-6) Finally, the Petition asserts loss of consortium against all defendants (Counts IX and X) (Pet. at Law 17-18, ECF No. 1-6)  After the Complaint was filed, XTRA requested a defense and indemnification from Pacer, and Pacer denied said request.

XTRA then filed suit in federal court against Pacer International, based on its guarantee of the liabilities of Pacer Transport. XTRA seeks a defense of the claims asserted in the Iowa Complaint and indemnification for those claims pursuant to a provision in the Rental Agreement.[1]  Pacer filed a motion to dismiss, arguing that the indemnification provision contained in the agreement does not and cannot reach claims against XTRA for damages caused by XTRA's own negligence.  The undersigned denied that motion on June 25, 2010. (Mem. & Order 5, ECF No. 35) Thereafter, the

---

[1] The indemnity provision at issue states in pertinent part:

> LESSEE HEREBY AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS XTRA LEASE, . . . , FROM AND AGAINST ANY AND ALL LOSSES, LIABILITIES, OBLIGATIONS AND EXPENSES . . . FOR PERSONAL INJURY (INCLUDING DEATH) OR DAMAGES TO ANY PERSON OR PROPERTY, WHEREVER OCCURRING, ARISING OUT OF OR INCIDENT TO LESSEE'S PERFORMANCE OR FAILURE TO PERFORM UNDER THE LEASE OR LESSEE'S USE, POSSESSION, MAINTENANCE OR CONTROL OF THE: (I) EQUIPMENT . . ."

(Complaint, Doc. #1, Exh. 4, p. 14)

2

XTRA filed a motion for judgment on the pleadings, which the undersigned denied on January 25, 2011. (Mem. & Order 7, ECF No. 62) On May 27, 2011, XTRA filed a Motion for Partial Summary Judgment, asserting that, as a matter of law, Pacer is obligated to indemnify and defend XTRA in the underlying Iowa lawsuit and that Pacer breached its contract with XTRA by failing to do so.

Also on May 27, Pacer filed a Motion for Final Summary Judgment on Pacer's Duty to Indemnify Plaintiff for Plaintiff's Own Negligence. In that motion, Pacer contends that the language of the indemnity provision in the rental agreement does not clearly and unambiguously indemnify XTRA for its own negligence. After the parties fully briefed the cross-motions for summary judgment, the undersigned held a hearing on August 24, 2011.

**Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

## Discussion

As previously stated, the issue in this case is the interpretation of the indemnity clause contained in the Rental Agreement.[2] XTRA argues that the clause provides for the defense and indemnification of XTRA by Pacer, even for allegations regarding XTRA's own negligence. Pacer, on the other hand, asserts that the indemnity clause does not indemnify XTRA for its own negligence such that Pacer is not obligated to provide a defense and indemnification under the terms of the clause. The indemnification clause provides:

> Lessee hereby agrees to indemnify, defend, and hold harmless XTRA Lease, its affiliates and their successors, assigns, employees, officers, directors, licensors and agents, from and against all losses, liabilities, obligations and expenses (including reasonable attorneys' fees) for personal injury, (including death) or damages to any person or

---

[2] While there appears to be some dispute over which Rental Agreement, the current Rental Agreement or a former version, governs, the resolution of such dispute is unnecessary for purposes of the present motions. Pacer acquiesces that the indemnification provisions in the current Rental Agreement apply for the purposes of the motions for summary judgment. (Pacer's Mot. for Final Sum. Judg. 3-4 n.3, ECF No. 65)

4

> property, wherever occurring, arising out of or incident to Lessee's performance or failure to perform under the lease or lessee's use, possession, maintenance or control of the: (I) equipment; (II) software; (III) communication services; or (IV) XTRA web sites. This indemnification provision shall survive the termination of the lease.

(XTRA Lease LLC Standard Terms and Conditions 7, ECF. No. 64-7)

The pertinent language is "from and against all losses . . . arising out of or incident to Lessee's performance or failure to perform under the lease or lessee's use . . . or control of the equipment." XTRA contends that "from and against all losses" renders the coverage unlimited such that it covers XTRA's negligence. Pacer maintains that "arising out of or incident to Lessee's performance" expressly limits the clause to those losses resulting from Pacer's use of the trailer.

In support of its position, XTRA relies on Utility Serv. & Maint. v. Noranda Aluminum, 163 S.W.3d 910 (Mo. 2005). In that case, the Missouri Supreme Court held that the indemnification clause at issue required the indemnitor to indemnify the indemnitee for all claims, including those claims alleging negligence by the indemnitee. Id. at 914. The provision in Noranda specifically stated:

> Seller [Utility] shall indemnify and save Purchaser [Noranda] free and harmless from and against any and all claims, damages, liabilities or obligations of whatsoever kind, including, but not limited to, damage or destruction of property and injury or death of persons resulting from or connected with Seller's performance hereunder or any default by Seller or breach of its obligations hereunder.

Id. at 911-12. Utility argued that the clause was ambiguous and should be interpreted as only applying to Utility's performance. The court noted that "contractual provisions releasing a party from liability for its own negligent acts must be stated clearly, unequivocally, and conspicuously." Id. at 913. However, the Noranda court also found that despite the requirement that liability limitations

5

for one's own negligence must be clear and unambiguous, sophisticated businesses may limit liability without precisely mentioning terms such as negligence or fault. Id. at 914 (citing Purcell Tire & Rubber Co., Inc. v. Exec. Beechcraft, Inc., 59 S.W.3d 505, 509 (Mo. 2001)). In finding that the requirement that Utility indemnify Noranda for "any and all claims" was not ambiguous and included Noranda's negligence, the Noranda court reasoned that "[t]he contract, however, specifically states that it includes, but is not limited to, Utility's performance under the contract. Thus, the contract by its plain language states that it relates to more than just Utility's performance." Id. at 914. Thus, the Noranda court held that the language in the indemnity provision "was sufficient to require Utility, a sophisticated commercial entity, to indemnify Noranda for all claims, including those alleging negligence by Noranda." Id.

XTRA argues that the indemnity provision in the case at hand is equally unlimited such that this Court should construe the provision as indemnifying all losses, including those stemming from XTRA's own negligence. Pacer, on the other hand, argues that the indemnity clause does not clearly and unequivocally provide for indemnification of XTRA's own negligence. To the contrary, Pacer asserts that the limiting language specifically precludes indemnification of such negligence.

"Missouri law makes clear that 'in a private contract, where the parties stand on a substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence.'" Nusbaum v. City of Kansas City, 100 S.W.3d 101, 105 (Mo. 2003) (quoting Kansas City Power & Light Co. v. Fed. Constr. Corp., 351 S.W.2d 741, 745 (Mo. 1961)). However, Missouri courts will not construe indemnity contracts as indemnifying "'one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms.'" Id. (citation omitted). In addition, where any doubt exists regarding the parties'

6

intentions, Missouri courts will not construe an indemnity contract to indemnify against one's own negligence. Id.

In Nusbaum, the Missouri Supreme Court held that the language "to the extent caused" contained in the indemnity clause expressed "the intent to limit the indemnitor's liability to the portion of fault attributed to the indemnitor." Id. at 106. The court concluded that the indemnification provisions in the agreements did not indemnify the indemnitees for their own negligence "independent of that of indemnitor." Id. at 107.

In the instant case, the undersigned finds that the indemnity clause contained in the agreement between XTRA and Pacer contained the same type of limiting language as that in Nusbaum and not the broad language in Noranda. While the provision contains the language "any and all losses," those losses are limited only to those arising out of Pacer's use, possession, maintenance, or control of the equipment. Nothing in the provision explicitly or unequivocally states that Pacer is required to indemnify XTRA for its own negligence. This language differs substantially from the contract in Noranda, which stated that the plain language of the contract related to more than just Utility's performance. Noranda, 163 S.W.3d at 914.

While XTRA argues that the losses arise out of Pacer's use because the accident would never have occurred without such use, the undersigned finds this does not comport with the unambigous language of the indemnity clause. The negligence alleged solely against XTRA in the Statler Complaint pertains to actions or inactions before XTRA leased the truck to Pacer and could not have arisen out of Pacer's use or maintenance of the trailer.

With regard to the claims against the combined defendants, however, the undersigned finds that in accordance with Missouri law, Pacer would be required to indemnify XTRA for any liability

7

it incurs as a result of Pacer's negligence. In Nusbaum, the Missouri Supreme Court construed the indemnification clause containing the limiting phrase "to the extent caused" as requiring the indemnitor to indemnify the indemnitee for indemnitor's negligence even if the indemnitee participated in part in the indemnitor's negligent conduct. Nusbaum, 100 S.W.3d at 107. The court explained, "[t]o hold otherwise would make the intended expression to limit liability to the acts of indemnitor meaningless." Id.

Therefore, should the plaintiffs in the Iowa state case attempt to hold XTRA responsible for Pacer's negligence, then Pacer would have an obligation to defend and indemnify XTRA for only that liability. However, as stated and explained above, under the unambiguous terms of the indemnity clause, Pacer is not obligated to defend or indemnify XTRA for XTRA's own negligence. To read the clause otherwise would contradict clear and unequivocal language in the indemnity clause.

While both parties attempt to raise additional arguments, the undersigned finds it unnecessary to address these contentions. Indeed, in Noranda, the Missouri Supreme Court case that XTRA argues controls the outcome of the instant case, the court based its opinion solely on the unambiguous language of the indemnification clause and declined to address the parties' additional claims. Noranda, 163 S.W.3d at 915. Similarly, as stated above, the clause at issue unambiguous indemnity agreement negotiated between two sophisticated businesses that does not clearly and conspicuously indemnify XTRA against loss or damage resulting from its own negligence. Thus, the Court finds that, based on the plain and ordinary language contained in that clause, Pacer is not required to defend or indemnify XTRA for its own negligence. Because there are no genuine issues of material fact with regard to the interpretation of the indemnity clause, Pacer is entitled to summary judgment in its favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant, Pacer International Inc's, Motion for Final Summary Judgment on Pacer's Duty to Indemnify Plaintiff for Plaintiff's Own Negligence [Doc. #65] is **GRANTED.**

**IT IS FURTHER ORDERED** that XTRA's Motion for Partial Summary Judgment [Doc. #63] is **DENIED.**

                                                    /s/ Terry I. Adelman

                                                  UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of January, 2012.